IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHANGE HAMILTON-HAYYIM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-06392 |
| | ) | |
| JESSE L. JACKSON, JR., | ) | |
| RICHARD BRYANT, | ) | |
| THERESA CALDWELL, | ) | |
| DEBORAH POSEY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 15, 2013, plaintiff Change Hamilton-Hayyim ("Hamilton-Hayyim") filed with this court a Second Amended Complaint alleging employment discrimination and retaliation. (Dkt. No. 24 ("2d Am. Compl.").) The Second Amended Complaint alleges that former Congressman Jessie L. Jackson, Jr. ("Jackson") and members of his staff—Richard Bryant ("Bryant"), Theresa Caldwell ("Caldwell"), and Deborah Posey ("Posey")—discriminated against Hamilton-Hayyim in her employment as Jackson's Director of Community Outreach on the basis of disability, race, and religion. (*Id.* at 2–3.) Specifically, Hamilton-Hayyim alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). (*Id.* at 3.) Hamilton-Hayyim also asserts claims against Jackson, Bryant, Caldwell, and Posey (collectively "Defendants") under the Family and Medical Leave Act of 1993 ("FMLA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Notification and Federal Employee Anti-Discrimination and Retaliation Act of

1

2002 ("No FEAR Act"), and for violations of her constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1976) ("*Bivens* Action"). (*Id.* at 3.)

Pending before this court is Defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. No. 28 ("Defs.' Mot.").) Defendants have filed a "Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss," (Dkt. No. 29 ("Defs.' Mem.")), to which Hamilton-Hayyim filed three separate responses, (Dkt. No. 34 ("Pls.' Initial Resp. to Defs.' Mot.")); (Dkt. No. 35 ("Pls.' Initial Resp. to Defs.' Mem.")); and (Dkt. No. 38 ("Pls.' [Second] Initial Resp. to Defs.' Mot.")). Defendants have filed a single reply to Hamilton-Hayyim's responses. (Dkt. No. 40 ("Defs.' Reply").) For the reasons stated below, Defendants' motion to dismiss is granted. Hamilton-Hayyim's claims falling under the Congressional Accountability Act—her ADA, Rehabilitation Act, Title VII, and FMLA claims—are dismissed without prejudice. Hamilton-Hayyim's claims falling under Section 1981, the No FEAR Act, HIPAA, and *Bivens* are dismissed with prejudice. Hamilton-Hayyim is given leave to file a Third Amended Complaint consistent with this opinion and Rule 11 of the Federal Rules of Civil Procedure on or before 8/15/13 for the purposes of re-alleging her claims falling under the Congressional Accountability Act and addressing the deficiencies noted in sections 1.B and 1.C of the court's analysis, should she desire to do so.

BACKGROUND

Hamilton-Hayyim's Second Amended Complaint includes attached copies of her Original Complaint and First Amended Complaint. (*See* 2d Am. Compl. at 13–47.) Hamilton-Hayyim also explicitly incorporates the facts from these prior complaints by reference. (*Id.* at 12

("Plaintiff is filing this Second Amended Complaint . . . to ensure clarity regarding the repetition of all allegations from the initial Complaint, in addition to the First Amended Complaint as correct and true.").) The Second Amended Complaint is therefore read as encompassing all allegations from each prior complaint. *See* Fed. R. Civ. P. 10(c). In addition, Hamilton-Hayyim attached paperwork from the United States Congress Office of Compliance to her Second Amended Complaint. (*See* 2d Am. Compl. at 19–22.) A "copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes," Fed. R. Civ. P. 10(c), therefore, the court may consider these additional documents when evaluating Defendants' motion to dismiss. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). The court accepts as true all well-pleaded factual allegations contained in Hamilton-Hayyim's Second Amended Complaint and attached exhibits at this stage of the litigation. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Hamilton-Hayyim served as the Director of Community Outreach for Jackson until her termination effective October 31, 2012. (2d Am. Compl. at 5, 9.) The first instance of discrimination Hamilton-Hayyim alleges was a September 2007 email to Hamilton-Hayyim from Bryant, then Jackson's District Director, in which he communicated to Hamilton-Hayyim "that he did not approve of her faith observance." (*Id.* at 3, 27). Specifically, Hamilton-Hayyim had advised Bryant that she "would be away observing Yom Kippur." (*Id.* at 27.) Bryant responded by noting that Hamilton-Hayyim's co-worker, Mimi, "does not take a day away from the office because Yom Kippur is a minor Jewish holiday." (*Id.*) Hamilton-Hayyim further alleges that in September 2010, Bryant again "made Plaintiff aware, via email and phone," that he disapproved of Hamilton-Hayyim's faith observance. (*Id.* at 4.) That same month, Caldwell, Jackson's Chief of Staff at the time, denied Hamilton-Hayyim leave to observe the Jewish festival of Sukkot

because Hamilton-Hayyim had not completed the necessary paperwork. (*Id.* at 4, 29.) Caldwell also required Hamilton-Hayyim to "work some 'Sunday church stop' events to balance out time for her faith observance," but did not give Hamilton-Hayyim "compensatory time" for this work. (*Id.* at 4, 29.) At a December 2010 meeting with Bryant and Caldwell, where Bryant was expected to apologize to Hamilton-Hayyim, Bryant instead "intimidat[ed] and ma[de] false claims against the Plaintiff." (*Id.* at 4.) In response to Bryant's comments and Jackson's office's "ineffective response" to them, Hamilton-Hayyim filed a complaint with the United States Congress Office of Compliance in January 2011. (*Id.* at 4–5, 27.)

As a result of this complaint, Hamilton-Hayyim alleges that she experienced "open, hostile harassment and retaliation . . . within [Jackson's] office." (*Id.* at 27.) Hamilton-Hayyim alleges that due to the complaint she filed with the Office of Compliance, she did not receive a "promotion" that Jackson had previously offered her in November 2010. (*Id.* at 4.) Generally, Hamilton-Hayyim alleges that Bryant "began limiting [her] participation as . . . Director of Community Outreach." (*Id.* at 5.) In particular, Hamilton-Hayyim was not allowed to conduct "outreach to the Jewish community" as she had been prior to her complaint. (*Id.* at 5, 30.) She further alleges Bryant and Posey[1] "began an unethical pattern of non-responsiveness to Plaintiff[']s workflow request[s]" which "affect[ed] Plaintiff[']s ability to respond to community concerns." (*Id.* at 6.) Additionally, in May 2011, Hamilton-Hayyim alleges that Bryant began to "intentionally" miscalculate her work hours, "resulting in erroneous compensation." (*Id.* at 5.)

Hamilton-Hayyim also alleges a series of actions taken in regards to her previously-approved medical leave. Though not explicitly stated in her complaint, Hamilton-Hayyim appears to have begun her medical leave in November 2010, when she received a copy of

---

[1] Posey became Hamilton-Hayyim's supervisor in October 2011. (*Id.* at 7.) Hamilton-Hayyim identifies her formal title as Deputy Chief of Staff. (*Id.* at 25.)

Jackson's "FML policy" for his office. (*Id.* at 4.) In February 2011, Jackson emailed his staff announcing a retroactive change to the Family and Medical Leave Act policy which "adversely affect[ed]" Hamilton-Hayyim, who was still on leave at that time.[2] (*Id.* at 5.) In April 2011, Bryant "threatened to rescind" Hamilton-Hayyim's medical leave unless she "overrode her medical provider[']s refusal to disclose her diagnosis under HIPPA [sic] protections." (*Id.* at 5.) In October 2011, Bryant reduced her compensation by 50% based on the recommendation of Hamilton-Hayyim's doctor that Hamilton-Hayyim take "intermittent" leave "to adjust to medications and make regularly scheduled appointments without interfering with office scheduling." (*Id.* at 7, 36.) When Hamilton-Hayyim discussed this reduction in salary with Jackson in January 2012, Jackson stated he knew about the reduction and that, due to Hamilton-Hayyim's "disability and treatments," he was "suffering the worst Congress of his career." (*Id.* at 7.) Hamilton-Hayyim alleges that Bryant agreed to "correct" her compensation at a March 2012 meeting; however, in fact, "he had no intention[]" of doing so and to date there has been no correction in her compensation. (*Id.* at 39–40.)

Hamilton-Hayyim also alleges in this case that she was a victim of racial discrimination. In support of this claim, Hamilton-Hayyim alleges that, in September 2011, Jackson explained to her that a co-worker's comments regarding "losing her black card for LIFE!" were a reference "to her social status with black people, not an American Express black card." (*Id.* at 6–7, 36.) When Hamilton-Hayyim advised Jackson that she was "insulted by [this] ideology," she alleges that there was "no follow up." (*Id.* at 36.)

In addition to what is set forth above, Hamilton-Hayyim pleads a series of other incidents in her 47-page Second Amended Complaint that she characterizes as harassing, discriminatory,

---

[2] Alternatively, Hamilton-Hayyim alleges that these retroactive changes occurred in December 2010, when Bryant was promoted to Chief of Staff. (*Id.* at 4.)

intimidating, or retaliatory. These events culminated in an e-mail from Bryant on October 24, 2012, advising Hamilton-Hayyim that her employment with Jackson's office was being terminated effective October 31, 2012. (*Id.* at 9.) The reason supplied in Bryant's email was "engag[ing] in conduct that has been detrimental" to Jackson, "including working to undermine him by assisting an independent congressional candidate who is on the ballot and running against him during the 2012 general election campaign." (*Id.* at 9.) Prior to this civil action, Hamilton-Hayyim filed at least three complaints with the Office of Compliance. Her initial complaint, filed in January 2011, was "abandon[ed]" or "dropped" in August 2011. (*Id.* at 6, 27–28.) She filed subsequent complaints with the Office of Compliance in September 2011 and January 2012. (*Id.* at 19–22.)

## LEGAL STANDARD

A plaintiff's complaint need only give a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). In making this determination, this court must not credit "legal conclusions" nor "[t]hreadbare recitals of the elements of a cause of action." *Id.* Moreover, a "plausible" claim is not merely one which is "conceivable" or creates a "suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations and internal quotation marks omitted). Instead, the "factual content" is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679. Finally, a complaint which is "so sketchy that [it] does not provide the type of notice of the claim to which the defendant is entitled under [the Federal Rules of Civil Procedure]" is "proper[ly]" dismissed by the court evaluating it. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) (citations and internal quotation marks omitted).

ANALYSIS

1. Congressional Accountability Act Claims

Hamilton-Hayyim brings claims under the ADA, the Rehabilitation Act, Title VII, and the FMLA. Congress has applied the employment discrimination protections of these laws to the legislative branch of the federal government through the Congressional Accountability Act ("CAA"). *See* 2 U.S.C. § 1302(a). In doing so, Congress provided the "[e]xclusive [p]rocedure . . . to seek a remedy for the rights and protections afforded by this Act." 2 U.S.C. § 1361(d). This Court will therefore construe Hamilton-Hayyim's claims under the ADA, the Rehabilitation Act, Title VII, and the FMLA (collectively "CAA Claims") as arising under the CAA.

To file a civil complaint alleging a violation of the CAA, a covered employee must first complete counseling and mediation through the United States Congress Office of Compliance. *See* 2 U.S.C. § 1408(a); *see also* 2 U.S.C. § 1301(3)(A), (4) (defining "covered employee" as "any employee of . . . the House of Representatives" and including "former employees"). The CAA has a statutory filing deadline stating that any civil complaint alleging a violation of the CAA must be filed no less than 30 days, but no more than 90 days, after a covered employee "receives notice of the end of the period of mediation." 2 U.S.C. § 1404. As discussed below, Hamilton-Hayyim filed her original complaint in this action on August 13, 2012, outside the 90-day statutory filing deadline for her CAA claims.

7

A. <u>Jurisdiction</u>

Defendants bring their motion to dismiss, in part, under Fed. R. Civ. P. 12(b)(1), alleging that this court lacks subject-matter jurisdiction over Hamilton-Hayyim's CAA claims because the 90-day statutory filing deadline is a "jurisdictional prerequisite." (Defs.' Mem. at 4.)

Barring language or context to the contrary, the Supreme Court has "repeatedly held that filing deadlines ordinarily are not jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 825 (2013). A court evaluating a potential jurisdictional prerequisite should "inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'" *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006)). Under certain conditions where there is no clear statement by Congress, the "context, including [the Supreme Court's] interpretations of similar provisions in many years past," may indicate Congress intended a particular provision to be regarded as jurisdictional. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010). This framework—a rebuttable presumption that statutory filing deadlines are non-jurisdictional—applies to suits against the federal government just as it does to suits against private parties. *Arteaga v. United States*, 711 F.3d 828, 832–33 (7th Cir. 2013) (citing *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95–96 (1990)).

The CAA provision setting forth the 90-day statutory filing deadline contains no reference to the jurisdiction of the district courts. *See* 2 U.S.C. § 1404. Nor does the context of the 90-day statutory filing deadline counsel that it should be construed as jurisdictional. The CAA does contain a set of requirements plainly labeled jurisdictional, but the 90-day statutory filing deadline is not explicitly included in this section of the statute. *See* 2 U.S.C. § 1408(a)

8

("The district courts of the United States shall have jurisdiction over any civil action commenced under [2 U.S.C. § 1404] and this section by a covered employee who has completed counseling under [2 U.S.C. § 1402] and mediation under [2 U.S.C. § 1403].") Where the Supreme Court confronted Title VII provisions with a similar structure—a statutory filing deadline separated from a different section plainly labeled as jurisdictional—it found the statutory filing deadline to be non-jurisdictional. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982). Because neither the language nor context of the CAA counsels a conclusion that the 90-day statutory filing deadline is jurisdictional, the presumption that this filing deadline is non-jurisdictional applies. This court therefore finds that it properly has jurisdiction over Hamilton-Hayyim's Second Amended Complaint under 28 U.S.C. § 1331 and 28 U.S.C. § 1408(a).

      B. <u>Timeliness of Hamilton-Hayyim's Complaint</u>

      The CAA's 90-day statutory filing deadline is an affirmative defense, and Hamilton-Hayyim therefore need not address it in her Second Amended Complaint. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). While a plaintiff "need not anticipate defenses and attempt to defeat them," however, "[a] plaintiff whose allegations show that there is an airtight defense has pleaded [her]self out of court." *Id.* In this case, the allegations of the Second Amended Complaint show that Hamilton-Hayyim filed her lawsuit beyond the 90-day statutory filing deadline.

      Hamilton-Hayyim pleads by exhibit that she completed counseling and mediation in two separate Office of Compliance complaints, numbers 12-HS-21 and 11-HS-137, and that the Office of Compliance issued an "End of Mediation Notice" with respect to each complaint. (*See* 2d Am. Compl. at 19–22.) As noted above, the 90-day statutory filing deadline is measured from the day the covered employee "receives notice of the end of the period of mediation." 2 U.S.C. §

1404. Hamilton-Hayyim alleges that she received one of the End of Mediation Notices from the Office of Compliance on April 27, 2012, although she does not specify the underlying complaint to which this notice pertained. (*Id.* at 3.) If Hamilton-Hayyim received her End of Mediation Notice for either complaint on April 27, 2012, as alleged, the 90-day statutory filing deadline would have ended July 26, 2012. Hamilton-Hayyim's initial complaint was not filed until August 13, 2013—eighteen days later. (Dkt. No. 1.) Hamilton-Hayyim has therefore pleaded herself out of court, and her CAA claims must be dismissed.

The court is skeptical, however, that Hamilton-Hayyim actually received her End of Mediation Notice on April 27, 2012. The notice in complaint 12-HS-21 was dated April 27, 2012, but was delivered via certified mail, return receipt requested. (2d Am. Compl. at 19.) This notice therefore had to travel from its point of origin, Washington, D.C., to Hamilton-Hayyim's home address in Chicago, Illinois, before it could be received by Hamilton-Hayyim. Hamilton-Hayyim's allegation that she actually *received* the notice on April 27, 2012, is therefore highly unlikely. The notice in complaint 11-HS-137 also could not have been received by Hamilton-Hayyim on April 27, 2012, because it was not issued until six days later, on May 3, 2012. (2d Am. Compl. at 21.)

It is more likely that Hamilton-Hayyim made a gaffe in her pleadings that was only brought to her attention by Defendants' motion to dismiss. This inference is supported by Hamilton-Hayyim's various responses to Defendants' motion, in which she explains, "[a]lthough the end of mediation notice [for the 12-HS-21 complaint] was dated/mailed to the plaintiff on April 27, 2012, it was not received until May 14, 2012." (Pls.' Initial Resp. at 4; Pls.' Initial Resp. to Defs.' Mem. at 6; Pls.' [Second] Initial Resp. at 5.) According to Hamilton-Hayyim, the "certification of record submitted to [her] employer by the Office of Compliance" will verify

10

the May 14, 2012 receipt date. (*Id.*) The record before the court does not include a copy of this certification, however, despite Hamilton-Hayyim's assertion that she attached a copy to her responses. (*Id.*)

According to the language of the statute and the Office of Compliance Rules of Procedure, "[w]hen documents are served by certified mail, return receipt requested, the prescribed period shall be calculated from the date of receipt as evidenced by the return receipt." *See* 2 U.S.C. § 1404; Pro. R. Off. Compliance § 1.03(c), *available at* http://www.compliance.gov/procedures/rulesofprocedure.pdf. If Hamilton-Hayyim received her End of Mediation Notice for the 12-HS-21 complaint on May 14, 2012, her time to file suit would not have run until August 12, 2012, which was a Sunday. Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure provides that "if the last day [of the time period specified by statute] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Accordingly, Hamilton-Hayyim would have had until Monday, August 13, 2012 to file her complaint, and her initial complaint in this case would have been timely.

Hamilton-Hayyim cannot amend her pleading through her "briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Because Hamilton-Hayyim comes to this litigation as a *pro se* plaintiff, this court will grant her the opportunity to amend her complaint. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam) ("[A] pro se plaintiff who makes a pleading gaffe in a complaint deserves an opportunity to offer a curative amendment before the complaint is dismissed with prejudice."). Hamilton-Hayyim's CAA claims therefore are dismissed without prejudice and with leave to re-plead.

11

C. Parties to CAA Claims

Defendants additionally move to dismiss Hamilton-Hayyim's CAA claims because she did not bring her claims against the proper parties. The CAA provides that the defendant to the action "shall be the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b). Individual members of Congress may not be named as defendants under the Act. *See Bastien v. Office of Sen. Ben Nighthorse Campbell*, 454 F.3d 1072, 1073–74 (10th Cir. 2006). The fact that Jackson is no longer a member of the U.S. House of Representatives does not change the proper party to be sued under the CAA. *Hanson v. Office of Sen. Mark Dayton*, 535 F. Supp. 2d 25, 28 (D.D.C. 2008) ("[N]othing in the CAA indicates that the 'employing office' ceases to exist for CAA purposes upon expiration of a Senator's term."); *see also Bastien v. Office of Sen. Ben Nighthorse Campbell*, No. 01-cv-799, 2005 WL 3334359, at *3 (D. Colo. Dec. 5, 2005). If Hamilton-Hayyim chooses to re-file her CAA claims, she must name the correct defendant, the Office of Congressman Jesse L. Jackson, Jr., instead of Jackson and his aides.[3]

2.  Section 1981 Claim

Hamilton-Hayyim next attempts to state a claim under 42 U.S.C. § 1981. Defendants make no arguments regarding Hamilton-Hayyim's Section 1981 claim and do not specifically enumerate it as a portion of the complaint they seek to dismiss. Considering that Defendants have generally sought to dismiss the entire Second Amended Complaint, including Hamilton-Hayyim's Section 1981 claim, for failure to state a claim upon which relief can be granted, this

---

[3] This court also notes that Hamilton-Hayyim has not adequately pleaded facts for disability discrimination and race discrimination. Hamilton-Hayyim does not allege that she is disabled, nor does she plead any facts regarding how she was discriminated against because of a disability. Her race claim is discussed in section 2 below. If Hamilton-Hayyim intends to re-assert her CAA claims in a Third Amended Complaint, she should be aware that these claims must be adequately pleaded in order to survive a motion to dismiss.

court will nevertheless evaluate the sufficiency of Hamilton-Hayyim's Section 1981 claim under Federal Rule of Civil Procedure 12(b)(6).

At the outset, the court notes that Hamilton-Hayyim's Section 1981 claim for racial discrimination in employment cannot survive separate and apart from her Title VII claim, because Title VII is "the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Services Admin.*, 425 U.S. 820, 835 (1976); *see also Mlynczak v. Bodman*, 442 F.3d 1050, 1056-57 (7th Cir. 2006). Hamilton-Hayyim's claim for racial discrimination in employment is therefore properly brought under the CAA, not Section 1981. *See Packer v. U.S. Comm'n on Sec. & Cooperation in Eur.*, 843 F. Supp. 2d 44, 47 (D.D.C. 2012) (finding "the language . . . and the legislative history behind" the CAA counsel that it is the exclusive remedy for claims of employment discrimination by Congressional employees); *see also* 2 U.S.C. § 1361(d) ("Exclusive procedure").

Moreover, whether pleaded under Section 1981 or Title VII, Hamilton-Hayyim's claim for racial discrimination in employment suffers from a lack of sufficient supporting factual allegations. Hamilton-Hayyim pleads a lone incident involving race:

> September 15, 2011 Congressman Jesse L. Jackson, Jr. advises plaintiff that a co-aides comments regarding "losing her black card for LIFE!" was relative to her social status with black people, not an American Express black card; no follow up when plaintiff advised she was insulted by the ideology openly expressed from a co-aide.

(2d Am. Compl. at 36.) Hamilton-Hayyim does not plead her own race, which makes it difficult to put this incident in any context. Additionally, the possessive pronoun "her" in the phrases "losing her black card for LIFE!" and "relative to her social status with black people" is not linked to an identifiable antecedent. Therefore, it is unknown whether this statement referred to Hamilton-Hayyim or if it instead referred to the co-aide/speaker, or another person altogether.

Hamilton-Hayyim does not plead any facts regarding how she suffered discrimination as a result of this comment, nor even that she regarded the comment as discriminatory in nature. What Hamilton-Hayyim alleges is that Jackson explained a co-worker's stray remark to Hamilton-Hayyim and then did not "follow-up" when she "advised" that she was "insulted by the ideology." (2d Am. Compl. at 36.) Hamilton-Hayyim's allegation that "Defendant discriminated against the Plaintiff because of the Plaintiff's . . . race," (2d Am. Compl. at 3), adds nothing to her claim, because it is a legal "conclusion, unsupported by the necessary *factual* allegations to support a reasonable inference of discriminatory intent." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (emphasis added in *McReynolds*).

    This court has an obligation to liberally construe Hamilton-Hayyim's *pro se* Second Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Even viewing Hamilton-Hayyim's allegations in the light most favorable to Hamilton-Hayyim, however, and accepting that the September 2011 incident occurred as she said it did, *McReynolds*, 694 F.3d at 879, the court finds that Hamilton-Hayyim has failed to allege a "story" of race discrimination that "holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). It is well-established in this circuit that "stray remarks in the work place" do not, in and of themselves, constitute discrimination. *See Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 444 (7th Cir. 1997) (collecting cases); *see also Dandy v. United Parcel Serv. Inc.*, 388 F.3d 263, 273 (7th Cir. 2004) (stray comments by "co-equals" with no link between decision-maker and the comment is not discrimination). Without any further factual allegations or additional context, the court therefore concludes that Hamilton-Hayyim has failed to plead a plausible claim for racial discrimination. *See Pettis v. L.A. Fitness*, No. 12 C 2806, 2012 WL 5936296, at *2 (N.D. Ill.

Nov. 27, 2012) (Guzman, J.) (dismissing Section 1981 suit in part because plaintiff did not adequately allege his own race, nor that the defendant "made any reference to plaintiff's race"), *aff'd sub nom.*, *Pettis v. Fitness Intern., LLC.*, No. 12-3909, 2013 WL 1701750 (7th Cir. Apr 19, 2013). Regardless, because her employment discrimination claims must properly proceed under the CAA, Hamilton-Hayyim's Section 1981 claim is dismissed with prejudice.

3.  No FEAR Act Claim

Hamilton-Hayyim next purports to bring a claim under the Notification and Federal Employee Anti-Discrimination and Retaliation Act ("No FEAR Act"), Pub. L. No. 107-174, 116 Stat. 566 (2002), though the factual basis for this claim is completely unclear. Hamilton-Hayyim pleads in her Second Amended Complaint that on December 15, 2010, she met with Caldwell and that this meeting followed "December 1 and 2 meetings, with Theresa Caldwell and Richard Bryant, wherein Richard Bryant violated the No Fear [sic] Act." (2d Am. Compl. at 30.) Hamilton-Hayyim does not further explain this allegation or describe the substance of the December 1 and 2 meetings. (*Id.*) The No FEAR Act requires federal agencies to reimburse the U.S. Treasury for damages paid in discrimination suits and creates certain notification and reporting requirements for the federal government. *See generally* Pub. L. No. 107-174, 116 Stat. 566 (2002). The No FEAR Act, however, does not create any private causes of action. *See, e.g.*, *Moore v. Grundmann*, No. 11-cv-1570-GPC-WMC, 2013 WL 2177775, at *7 (S.D. Cal. May 20, 2013) ("[The] No FEAR Act . . . does not create a substantive right for which the government must pay damages."); *Williams v. Spencer*, 883 F. Supp. 2d. 165, 182 (D.D.C. 2012) (holding that the No FEAR Act "does not provide a private cause of action"); *Mills v. Barreto*, No. Civ.A. 3:03CV735, 2004 WL 3335448, at *3 (E.D. Va. Mar. 8, 2004) *aff'd* 123 F. App'x 138 (4th Cir. 2005). Hamilton-Hayyim's claim under the No FEAR Act is therefore dismissed with prejudice.

4.     HIPAA Claim

Hamilton-Hayyim also attempts to bring a claim under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 141–191, 110 Stat. 1936 (1996), possibly for Bryant's "threat[s] to rescind Plaintiff[']s FML unless Plaintiff overrode Plaintiff[']s medical provider[']s refusal to disclose her diagnosis under HIPPA [sic] protections." (2d Am. Compl. at 5.) Again, Hamilton-Hayyim fails to state a claim upon which relief can be granted. HIPAA empowered the Secretary of Health and Human Services to promulgate regulations relating to privacy standards for medical information. *See* Pub. L. No. 104–191, § 264, 110 Stat. 1936, 2033 (1996). These standards authorize the Secretary of Health and Human Services to take enforcement action against health care providers and insurers for noncompliance with the privacy standards. 45 C.F.R. §§ 160.102, 160.312 (2012). HIPAA, however, does not provide a private cause of action for enforcing the privacy standards. *See, e.g.*, *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (unpublished opinion); *Butler v. Ill. Dep't of Transp.*, 533 F. Supp. 2d 821, 827 (N.D. Ill. 2008) (Bucklo, J.); *Levin v. Bd. of Educ.*, 470 F. Supp. 2d 835, 838 (N.D. Ill. 2007) (Grady, J.); *Doe v. Bd. of Trs. of the Univ. of Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006) (Kennelly, J.). Hamilton-Hayyim's claim under HIPAA is therefore also dismissed with prejudice.

5.     *Bivens* Claim

Finally, Hamilton-Hayyim brings a claim for a violation of the U.S. Constitution, redressable under the reasoning of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1976). In *Bivens*, "the Supreme Court recognized an implied cause of action for damages against federal officers to redress a constitutional violation." *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013). Since then, the Supreme Court has significantly

"refined and narrowed" this more general proposition, and the Seventh Circuit has concluded that any "presumption in favor of a *Bivens* like remedy . . . has long since been abrogated." *Id.* at 703, 705 (quoting *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc) (internal quotation marks omitted) *cert. denied*, No. 12-976, 2013 WL 488898 (U.S. June 10, 2013).)

In *Davis v. Passman*, the Supreme Court did expand the holding of *Bivens* to recognize a constitutional claim under the Fifth Amendment's due process clause where a Congressman had engaged in employment discrimination. *Davis v.* Passman, 442 U.S. 228, 231–33 (1979). The Court noted, however, there was no alternative remedy available to the plaintiff for employment discrimination, as Title VII specifically exempted "congressional employees" from its scope at that time. *Id.* at 247. The Court further note that that employees who *are* covered by Title VII may be barred from seeking a *Bivens* claim for employment discrimination. *Id.* at 247 n.26 (citing *Brown v. General Servs. Admin.*, 425 U.S. 820 (1976)).

Subsequent Supreme Court interpretations of *Davis* have found the lack of alternative remedy available at that time to be an important factor in the Court's reasoning. *See Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012) (finding that, in deciding *Davis*, "the Court emphasized the unavailability of other alternative forms of judicial relief") (internal quotation marks omitted); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001) ("In *Davis,* we inferred a new right of action chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation."); *United States v. Stanley*, 483 U.S. 669, 678 (1987) (noting the dicta in *Davis* suggested that "an explicit congressional declaration that another remedy is exclusive would bar such an action") (internal quotation marks omitted). More recent jurisprudence has held that, even with an assumption that a "constitutionally recognized interest is adversely affected by the actions of federal employees," there must be a two-step process to determine if *Bivens* claim

should apply. *Engel v. Buchan*, 710 F.3d 698, 704 (7th Cir. 2013) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Step one is inquiring whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (quoting *Wilkie*, 551 U.S. at 550). Step two, if there is not an alternative process, is a "remedial determination" by the court "paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.* (quoting *Wilkie*, 551 U.S. at 550).

This court need only reach the first step. There is clearly an "alternative, existing process for protecting [Hamilton-Hayyim's employment] interest" which did not exist at the time of the Supreme Court's decision in *Davis*: the CAA. As referred to earlier in this opinion, the CAA exists as the "[e]xclusive [p]rocedure" to remedy "the rights and protections afforded by" the CAA. 2 U.S.C. § 1361(d)(1). Where Congress has created "an elaborate remedial scheme . . . for the protection of . . . constitutional rights in the employment context" federal courts are "not permit[ted] . . . to apply a separate constitutional cause of action." *Robbins v. Bentsen*, 41 F.3d 1195, 1202 (7th Cir. 1994) (citations and internal quotation marks omitted) (rejecting *Bivens* claim in a federal employment context due to the application of the Civil Service Reform Act of 1978). In the analogous Title VII context, district courts in this circuit have indeed found that this alternative remedy precludes a *Bivens* claim for employment discrimination. *See Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *3–4 (N.D. Ill. Sept. 10, 2008) (Dow, J.); *Bartley v. U.S. Dep't of the Army*, 221 F. Supp. 2d 934, 939–40 (C.D. Ill. 2002); *Coe v. Nat'l Labor Relations Bd.*, 40 F. Supp. 2d 1049, 1053–54 (E.D. Wis. 1999).

As the exclusive remedy of Congressional employees for employment discrimination, the CAA constitutes a remedial scheme which would preclude a *Bivens* claim for employment

discrimination. *Accord Packer v. U.S. Comm'n on Sec. & Cooperation in Eur.*, 843 F. Supp. 2d 44, 47 (D.D.C. 2012) ("[M]easures available to Plaintiff pursuant to the CAA preclude a *Bivens* remedy."); *Hensley v. Office of the Architect of the Capitol*, 806 F. Supp. 2d 86, 92–93 (D.D.C 2011). Therefore, Hamilton-Hayyim may not maintain a *Bivens* claim for employment discrimination, and this claim must also be dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Hamilton-Hayyim's claims falling under the Congressional Accountability Act—ADA, Rehabilitation Act, Title VII, and FMLA claims—are dismissed without prejudice. Hamilton-Hayyim's claims falling under Section 1981, the No FEAR Act, HIPAA, and *Bivens* are dismissed with prejudice. Hamilton-Hayyim is given leave to file a Third Amended Complaint consistent with this opinion and Rule 11 of the Federal Rules of Civil Procedure on or before 8/15/13 for the purposes of re-alleging her claims falling under the Congressional Accountability Act and addressing the deficiencies noted in sections 1.B and 1.C of the court's analysis, should she desire to do so. Status hearing set for 8/22/13 at 9:00 a.m.

                ENTER:

                _____
                JAMES F. HOLDERMAN
                United States District Court Judge

Date: July 31, 2013