IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHANGE HAMILTON-HAYYIM | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 12 C 6392 |
| THE OFFICE OF CONGRESSMAN JESSE L. JACKSON, JR. | ) ) ) ) ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 14, 2013, *pro se* plaintiff Change Hamilton-Hayyim ("Hamilton-Hayyim") filed her Third Amended Complaint (Dkt. No. 42) naming as the only defendant "The Office of Congressman Jesse L. Jackson, Jr.," pursuant to the mandate of the Congressional Accountability Act ("CAA"), 2 U.S.C. § *1301 et seq.* and this court's order of July 31, 2013. (Dkt. No. 41.) Hamilton-Hayyim alleges in her Third Amended Complaint (Dkt. No. 42) that she "was continuously employed in the Office of former Congressman Jesse L. Jackson, Jr. from April 1, 2007 until November 1, 2012." (*Id.* at 3.) She also purports to assert several violations of the federal law regarding her employment prior to the termination of her employment on November 1, 2012. (*Id.*)

Congressman Jesse L. Jackson, Jr. resigned from his congressional office as a Member of the United States House of Representatives on November 21, 2012.

The Office of House Employment Counsel ("OHEC") filed its pending "Motion to Dismiss for Lack of Subject Matter Jurisdiction on Grounds of Abatement and Mootness" (Dkt. No. 49) on October 16, 2013, to which Hamilton-Hayyim responded (Dkt. No. 62).

The OHEC's singular argument is,

> [T]he putative defendant in this case – the Office of Congressman Jesse L. Jackson, Jr. – ceased to exist when Congressman Jackson resigned from Congress on November 21, 2012. When a governmental entity ceases to exist, the case abates and becomes moot and, thus, no longer presents an Article III case or controversy. Accordingly, because there is no longer a live defendant in this action, this Court does not have subject matter jurisdiction of this case and the Third Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

(*Id.*)

The OHEC is correct. The CAA is the federal statutory authority that grants "district courts of the United States" subject-matter jurisdiction "over any civil action commenced under section 1404(a)" of the CAA, such as this case. Under § 1408(b) of the CAA, the only statutorily permissible defendant in this case is "The Office of Congressman Jesse L. Jackson, Jr." Hamilton-Hayyim is a "covered employee," under the CAA, 2 U.S.C. § 1301(3)(A)(4) because she is a former employee of the House of Representatives. The personal office of Congressman Jesse L. Jackson, Jr. was Hamilton-Hayyim's employing office. *See* U.S.C. 1301(9)(A). The personal office of Congressman Jesse L. Jackson, Jr. ceased to have the ability to hire, fire, make any employment decisions or take any employment action when Congressman Jackson ceased to hold congressional office. The name of that office was changed to the "Office of the Second Congressional District of Illinois." (Dkt. No. 50, Ex. D.) Under the Rules of the House of Representatives, the Clerk of the House took over the power to supervise and manage former Congressman Jackson's personal office. The Rules of the House, however, do not provide that the Clerk of the House acquired successor liability for the actions of "The Office of Congressman Jesse L. Jackson, Jr." (*Id.*, Ex. E.)

The CAA is explicit that the only statutorily allowed defendant in a CAA action "shall be the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred," 2 U.S.C. § 1408(b). The CAA has no provision for congressional successor

liability to implement the part of Rule 25(d) of the Federal Rules of Civil Procedure that provides, "The officer's successor is automatically substituted as a party," as would automatically occur with the head of a department of the Executive Branch, *see, e.g.*, 42 U.S.C. § 2000e-16(c). The fact that the CAA statutorily requires that the defendant in a case such as this be the "employing office alleged to have committed the violation, or in which the violation is alleged to have occurred," coupled with the fact that each congressional Member's office ceases when that Member of Congress leaves Congress, demonstrates a congressional mandate under the CAA to end any employment action liability of that respective Member's personal office at that time. Certainly, former Congressman Jesse L. Jackson, Jr.'s congressional successor in the Second Congressional District of Illinois should not be saddled with liability for, or the burden of, defending a lawsuit about former Congressman Jackson's purported employment misdeeds.

It has long been the law in the Seventh Circuit, *see, e.g., Skolnick v. Campbell*, 454 F.2d 531, 532-33 (7th Cir. 1971), *Skolnick v. Kerner*, 435 F.2d 694, 695 (7th Cir. 1970), *Skolnick v. Parsons*, 397 F.2d 523, 525 (7th Cir. 1968), that abatement applies to any suit brought against a dissolved entity.

This court is well aware that United States District Judge Leon in the District of Columbia in *Hanson v. Office of Sen. Mark Dayton*, 535 F. Supp. 25 (D.D.C. 2008) and United States District Judge Brimmer of the District of Colorado in *Bastien v. The Office of Senator Ben Nighthorse Campbell*, 2005 WL 3334359 (D. Col.), denied similar motions in cases before them. This court appreciates the rulings in those cases, but respectfully disagrees with them under the law as set forth by the CAA. Congress in the CAA created the entity known statutorily as the "employing office" for each Member of Congress, 2 U.S.C. § 1301(9). Congress in the CAA statutorily mandated that the only defendant that could be sued under the CAA by a "covered

employee" such as Hamilton-Hayyim is the "employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b).

For more than a half-century, the law of the Seventh Circuit has been clear on the point that "in the absence of a statute to the contrary, an action against an officer of the United States abates upon his resignation," *see e.g., Bowles v. Wilke*, 175 F.2d 35, 38-39 (7th Cir. 1949). Similarly, on the national level, common law abatement applies when a statutorily created entity that has been sued dissolves with no successor liability statutorily in place, *see*, *e.g., Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259-260 (1927). In this case, since there is no statutory provision that allows this lawsuit to survive former Congressman Jackson's resignation, abatement applies.

Congress could have statutorily created successor liability in this instance. Congress, however, chose not to do so. That decision by Congress not to create successor liability or to continue liability in a former Member's "employing office" is logical. Congress certainly does not want to burden a new Member with the liability of a former Member. Also, once a Member of Congress and her or his staff leave congressional office, it is unreasonable to continue to burden the taxpayers of this country with expenses of defending lawsuits stemming from that Member's employing office. Moreover, once former congressional personnel leave the congressional setting, the gathering of evidence to defend against allegations by a former congressional employee of purported employment discrimination is much more difficult and more expensive than before the Member left office, even if the allegations are unfounded and the defense is meritorious. For example, here former Congressman Jackson was convicted of criminal conduct unrelated to the allegations Hamilton-Hayyim has made in this case. Former Congressman Jackson is now in prison. He and other witnesses that possibly could meritoriously

defend against Hamilton-Hayyim's assertions are less available to assist the OHEC than when the "Office of Congressman Jesse L. Jackson, Jr." existed.

As stated earlier, had Congress desired to establish successor or continuing liability of the statutorily created "employing office," of a former Member of Congress, it could have done so. Congress has done so in other instances as explained in the OHEC's Reply (Dkt. No. 63 at 5-6). Likewise, Congress has provided no statutory waiver of sovereign immunity for the "employing office" of a former Member of Congress, as Congress did by making a Member's "employing office" available for suit during that Member's tenure in Congress.

A proper interpretation of the CAA's language and Article I § 2 of the United States Constitution compels the decision that the "employing office" of a Member of Congress ceases when the Member ceases to hold congressional office. The OHEC's arguments in support of this point are persuasive. Abatement applies. This case is moot under the CAA. There is no case or controversy left to adjudicate.

This result may seem harsh to some, but if Congress perceives that a problem exists with this result under the CAA, it should be Congress, not the courts, who should provide the remedy. This instance and others of a similar nature affect the inner workings of Congress, and it is Congress, not the courts, that should establish continuing or successor liability of a former Member's "employing office" after that Member has left her or his congressional seat.

## Conclusion

The Motion to Dismiss for Lack of Subject Matter Jurisdiction on Grounds of Abatement and Mootness (Dkt. No. 49) is granted. Any other pending motions are moot. This case is dismissed with prejudice for lack of subject-matter jurisdiction with prejudice.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: March 25, 2014